The next matter, number 221614, Barbara M. Parmenter versus the Prudential Insurance Company of America et al. At this time, would Attorney Feigenbaum introduce himself on the record to begin? Good morning. May it please the Court, Jonathan Feigenbaum for the I intend to address two topics during my short time. The first is on the unambiguous language requiring the insurance commissioner approval before Prudential could lawfully raise insurance premiums. And the second on why long-term care insurance is so different than health insurance, which seems to have been part of the District Court's thought process. People buy long-term care insurance often in their 40s, 50s, 60s, planning for their 80s and 90s. And one of the features, and this is discussed in our brief, of long-term care insurance in this ERISA plan is rate stability. And in this case, Prudential explicitly promised in the ERISA plan that would only increase premiums if the Massachusetts commissioner approved the increase. And this is a critical plan term that surely would have impacted all the employees at Tufts University when they elected to participate in the plan. From the District Court's opinion, it appears the Court believed that somehow health insurance and long-term care insurance are the same. In the docket entry dismissing the case, the Court called Ms. Parmenter's reading of the plan, quote, nonsensical, and then the Court wrote, as it could lock in premiums for participants for years, possibly decades, while the cost of medical expenses and inflation continue to rise. What should we make of the plan's premium section, section C? Where Prudential reserves the right to change the rates. Prudential did reserve the right to raise premiums. Prudential has the right to raise premiums, but no premium can take effect because of the front part of the plan that says premiums are subject to approval by the Massachusetts insurance commissioner. I mean, another way to look at that is, let's do this in the reverse. If Ms. Parmenter, let's pretend like at some point filed a claim and she sought reimbursement for treatment in a detoxification center, Prudential would go, aha, look at the exclusions. It's only one sentence, but it says, we do not cover services provided in a detoxification center. Much has been made by Tufts in its argument and somewhat by Prudential, oh, just sort of ignore that sentence. The plan has to be read as a whole. So the district courts... At the time this agreement was reached, was there some anticipation that the commissioner would in fact begin to operate in this arena? Excellent question, Your Honor. I believe the answer is yes. Why do I say that? Because there was quotations in the amended complaint that came from a response that Prudential wrote to the Massachusetts commissioner when a regulatory complaint had been filed that said, oh, we didn't really understand the landscape here in Massachusetts at the time, but we added this to the plan. I'd also point the court to pages 22 and 22 of Prudential's brief where there's a discussion about, well, we knew we were regulated, for example, in California and Pennsylvania, and the language is different. It just says, you know, we can raise your premiums. In Massachusetts, though, in this plan that was provided to Tufts employees, this language was added specifically subject to approval of the Massachusetts commissioner. So the presumption... Well, two things. One, Prudential knew what it was writing, and secondly, to answer your question directly, there was probably a presumption that it was imminent that Massachusetts would regulate. I believe there's only four states that do not regulate group employer long-term care insurance, and Massachusetts is one of those. Does the impossibility of the commissioner's performance since they've declined to enter this arena, does that in any way make this an ambiguous contract? No. The language is plain. It says, subject to approval, and Ms. Palmer's permission is Prudential can raise premiums once it sees and gains approval from the commissioner. There's really nothing that stopped Prudential with not moving before the commissioner for a rate filing. I don't know what the commissioner would have done, but there was nothing that Prudential did to try to get approval. And I think everyone would anticipate at some point the area's going to be regulated, but impracticability of performance is not an excuse in this case. I think when I filed the reply brief, there was a very recent SJC case from very early in January discussing impracticability of performance, and that will excuse something under a contract when it's not envisioned. Something very unusual comes up, like what we all experienced through COVID maybe. Certain things became impracticable, but here that doesn't excuse Prudential. Prudential agreed to provide more than either the insurance statute or the regulatory requirements mandated. And in the world of ERISA, on the welfare benefit side, essentially there is nothing that has to go into a welfare benefit plan other than to describe the type of benefits and to identify the fiduciaries and a few other things, like providing an amendment procedure. Prudential here made a conscious effort to include that language. Perhaps it was so people wouldn't go and buy policies on the individual market that were regulated. At some level, it's not of consequence because Prudential knew exactly what it was doing. And where it started out a little while ago discussing why it's so different than health insurance and it's so important is this. Health insurance, we're pretty much used to the premiums reset every year. Why? Health insurance costs are certainly much more unpredictable. Inflation impacts health insurance in a different way, changes in medicine and so forth. And we're all used to health insurance premiums typically going up each year. Long-term care, as I said, people buy it planning for 20, 30, 40 years out into the future. The way the system is set up is the inflation is baked into the rates. And the other thing that's very important is, for example, in this plan, Prudential knew what its costs were. There's a chart on the page, I can't recall the page number, but it says you will be reimbursed up to a daily rate of, you can select, I think, $100 a day, $150 a day, $200 a day, $300 a day. It's not the same as in health insurance. For example, if I walk out of here, I get hit by a car, I have to go for a ride to Mass General, I'm treated in the emergency room. We don't really know what those costs are. Here, this ERISA plan has fixed costs. They're identified on day one. And the other thing is the plan has a maximum cap. When Ms. Parmenter bought in, like all the other participants, the total exposure Prudential was subject to was known on day one. And for that reason, it is very different than health insurance. I suggest the district court's analysis conflated the two by its comparison of increased medical costs and inflation. Thank you. The benefit provided by this plan is only a daily payout? In Ms. Parmenter's case, it is a reimbursement up to X dollars a day. Other participants, Your Honor, if you look at the plan, could opt for what you would call in the long-term care world indemnity, so long as the person met the two activities of daily living trigger. Instead of taking a bill, submitting to the insurer and getting reimbursed, if the person qualifies, they get up to X dollars per day without submitting bills. But that was an optional feature, which is in the plan. But that is an important part of long-term care insurance. And I assume with different cost structure. I think that was an optional premium to pay for the indemnity provision rather than the reimbursement. But it's also capped at a daily rate. Thank you, Your Honor. Thank you, Counsel. At this time, would Attorney Amert please introduce herself on the record to begin? Good morning, and may it please the Court. I'm Amanda Amert for Defendant Prudential Insurance Company of America. The plain language of the long-term care policy here forecloses plaintiff's claims, and the district court correctly dismissed them with prejudice as a result. The issue facing the district court was how to construe policy terms that clearly give prudential discretion to increase premiums, but include the phrase, subject to the approval of the Massachusetts Insurance Commissioner, when the commissioner could review and approve premium increases, but has chosen not to. The district court concluded that the only logical reading of the subject to language in the policy was that given the commissioner's decision not to review premium increases, prudential is free to increase premiums, as described in the policy. And the plaintiff's reading locking prudential into providing increasingly expensive coverage, potentially forever, without any ability to raise premiums, was not plausible. What do you say about the cap argument that we just heard, that it was fixed at the time the contract was entered into? So, a couple of things, Your Honor. First, this is a group policy. The language that Ms. Parmenter has pointed to applies to everybody with coverage under the plan, regardless of whether they opt for the fixed maximum, and I'll get back to the maximum in a second, or the inflation increases over time. So, the reading of the language has to be logical when applied to everyone it's meant to cover. Second, the cost of providing care to prudential is not fixed by the fact that there is a certain daily maximum, or even a lifetime maximum, which also applies under the policy. When an insurer sets premiums, it makes a calculation for the whole population that is covered by the policy of how much it will cost over the entire time the policy is in effect to provide coverage. What has happened over time, and the Massachusetts Insurance Commissioner itself has recognized this, is that people are living longer, they're making more claims, and as a whole, the cost of providing the coverage here increases. Even though there is a cap for each individual, the more individuals use it, and the longer they use it, the more days they use it, the more it costs. And that's the very complicated actuarial math, which is the sort of thing that drove me to law school, that prudential or other insurance companies must undertake in order to set premiums. And that's why the Massachusetts Insurance Commissioner has recognized that level policy, level premium policies for long-term care are not viable. And in fact, in the individual context, where the Massachusetts Insurance Commissioner does regulate premiums, it is on the record as stating publicly, it will not approve level premium policies because they're not viable for the long term. But why has the commissioner declined to participate in this approval process? It's a great question, Your Honor. And why is it not a political issue for prudential, as opposed to a legal issue for us? So to take your questions in order, Your Honor, we don't know why the Massachusetts Commissioner has opted to regulate premiums for individual policies, but not for group policies. However, there is a logical reason. Individual policies are purchased by individuals. Group policies are negotiated by employers who are ERISA fiduciaries. They're negotiated with the employers, and so there is a bargaining power in a group policy that does not exist for individuals. Here, the question for the court, for this court and for the district court, is how do we apply this subject to the approval language in this unusual circumstance where the Massachusetts Insurance Commissioner has decided, in effect, to allow market forces to provide the check on premium increases for group long-term care policies. The district court looked at the policy, which plainly contemplates a regime in which premiums increase over time, and prudentials allow it to increase premiums over time, and concluded that applying a common-sense reading and construing the contract is this court's Bucharest case direct... What do you base that statement on, that the contract clearly contemplates premiums raising over time? Sure. The contract discusses increases in premiums in three places. The first is the forward, which my colleague has focused on. That section states prudential cannot change the terms of your coverage on its own, except as described in this paragraph. It may increase the premiums you pay, subject to the approval of the Massachusetts Commissioner of Insurance. The second place that it references is in the increases in premiums section. That's at page 12 of the policy, which is at JA-52, where it simply states prudential also reserves the right to change premium rates, and then provides some conditions, none of which mention the insurance commissioner. It has to do with giving notice to participants and applying any increase across a class-wide basis. And finally, the policy gives examples and provides remedies for participants if increases are too substantial. In that section, which is at JA-68 and 69, the policy provides, gives examples of substantial premium increases that could be imposed, and the examples range up to 200%. So very clearly, the policy as a whole envisions a world in which prudential does have the ability to increase premiums. It does not envision a world, as a plaintiff has argued here, where there is no ability to increase premiums. But by putting subject to approval, it envisioned a world where you had the ability to increase, but in which there would be some oversight by a neutral third party. And there is always the possibility that the insurance commissioner will come in. So that provision, properly read, acknowledges the uncertain states of regulation in Massachusetts at the time the policy was written. An insurance policy for a group plan like this serves a number of functions. One of them, a very important one, is to give notice to plan participants of exactly how their coverage works. That's really a hard task for a complex policy like this. But it's done in other states. In other states, which have different regulatory regimes, do have different language. Your Honor, I would submit that... But the point of having regulation is so that there's a particular structure by which the assessment of the policy increase functions, and there are all kinds of considerations that are made by the commissioners in the other states as to whether the request that you're making is reasonable in light of all of these considerations, which you know in the insurance world a lot better than I do. I know enough to know that there are factors that the commissioner takes into consideration. That's true, Your Honor. And here, the district court needed to interpret what the silence of the insurance commissioner meant in light of this policy language. And it determined that in a situation where the commissioner has chosen to leave to market forces the amount of premium increases, it has more functionally approved those increases than disapproved them, which is what my colleague is arguing. I see my time is up. Unless there are any other questions, we'll rest on our briefs. Thank you, Your Honor. Yes, thank you, Mr. Clerk. May it please the Court, Douglas Motsenbecher for Defendant Appellee Tufts. We ask that the judgment below be affirmed. The judgment was sound. Where are we? The case below is really a declaratory judgment action. That's all it ever was. We're just asking the district court to read the policy drafted by Prudential that gave Prudential sole authority to raise premiums. In this instance, the Supreme Court in Verity v. Howe has held that when a plaintiff has an express remedy under one of ERISA's civil enforcement provisions, a plaintiff may not rely on a breach of fiduciary duty claim under ERISA's catch-all provision, which is found in 502A3. And as I know many of you know, that's really been a battlefield of litigation these past few years. It's what remedies a party can get. But in Verity v. Howe, the Supreme Court said, look, if a plaintiff is suing an insurance company for benefits, they have a clause of action under 502A1B. That's all the remedy they need. They need not bring a supplemental claim for breach of fiduciary duty under A3. Justice Breyer made that point very, very clear. But Tufts is just not a proper party defendant in this case. It did not set the premiums. It has played as nominal a role in this picture as nominal can ever get. We have in this case, basically, in terms of the remedy that plaintiffs seek, it's a heads or tails outcome. If plaintiff is correct and you take their strange rating of the contract and affirm it, then prudential may not impose its increase. Tufts is therefore not implicated. If the court affirms, well, plaintiff's case is over and the judgment is affirmed once again. Tufts is not implicated. We look at the ad damnum clause in the complaint. It doesn't seek any remedy against Tufts. The ad damnum clause found at JA3637 is seeking to bar prudential from imposing its premium increase. My client didn't impose the premium increase. And under the plan, prudential had sole authority to set premiums. When you look at the Supreme Court's decision in Tholl, T-H-O-L-E, from about two years ago, the Supreme Court said that if you cannot leave a plausible claim for damages at the pleading stage, you do not have Article III standing. So when you look at what they want from Tufts, they are really seeking nothing. Consequently, we see no viable claim. And just if I can say that they say we should have sued the insurer. Never seen a case like that. They don't cite any where they can't cite any. And so we would, as to going back and amending, we don't see how they would ever amend this complaint. This was a one-trick pony case. And the district court was perfectly correct to reject it. We ask that the court affirm. Thank you so much. Thank you, counsel. At this time, Mr. Feigenbaum, please reintroduce yourself on the record. You have a two-minute rebuttal. Thank you. Jonathan Feigenbaum again for the appellant. Just a few comments. As to the last one on Tufts' position, Tufts is a argument of Tufts had nothing to do with this. If you look at the forward section that talks about premium raises may only be made subject to the approval of the commissioner, the last sentence of that part of the policy reads, the changes can be made upon agreement by the group contract holder, that's Tufts, and may be subject to regulatory approval. Tufts has co-fiduciary liability for not doing anything to stop Prudential from making what is an unlawful raise of the premium. My colleagues have also focused on parts of the plan that provide these examples. Here's what's happened. What your premium will be if it goes up 200%. There is nothing in that language, I'm sorry, there is nothing in the plan under Tufts' reading that stops Prudential from raising the premiums 10,000%. Prudential says we don't have to get regulatory approval. If Prudential decides this block of business is a money loser, one way to eviscerate all the participants' rights and get rid of the policy is just raise the premiums 10,000%. No one is going to pay for that and that will be the end of the coverage. And for that reason, going back to a number of the questions that Judge Thompson asked, this subject to regulatory approval has real meaning in this plan. It's an ERISA plan. Coming up here over the years, we discussed how the document terms have meaning, those document terms control. Prudential explicitly wrote this provision into the plan. It provides good protection for the employees and at some point Prudential can raise the premiums lawfully as we will assume that the Mass. Commissioner will regulate. For that reason, I'd ask the court to vacate the district court's decision, either order Prudential and Tufts to answer the complaint or provide leave to amend again. Thank you very much.